UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JOSHUA LOPP et al.,

                    Plaintiffs,              Case No. 1:22-cv-1135

v.                                           Honorable Sally J. Berens

HEIDI WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by three state prisoners, Joshua Lopp, Quentin Jones, and Darell Boyd. Plaintiffs paid the full filing fee in this action. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiffs consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF Nos. 4, 5, 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiffs' *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiffs' allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). As detailed below, applying these standards, the Court will partially dismiss Plaintiffs' complaint for failure to state a claim. Further, the Court will direct the Clerk to sever the claims of Plaintiffs Lopp, Jones, and Boyd into separate actions.

## Discussion

### I.    Factual Allegations

Plaintiff Lopp is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS) in Jackson, Jackson County, Michigan.[2] Plaintiff Jones is presently incarcerated with the MDOC at the Lakeland Correctional Facility

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] *See* MDOC's Offender Tracking Information System, https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=654488 (last visited May 2, 2023).

(LCF) in Coldwater, Branch County, Michigan, and Plaintiff Boyd is presently incarcerated at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which Plaintiffs complain occurred at LCF. Plaintiffs sue MDOC Director Heidi Washington; MDOC Deputy Director Jeremy Bush; LCF Warden Brian Morrison; LCF Chaplain Adam Hollingsworth; MDOC Special Acts Coordinators Steven Adamson and Adrian Dirschell; and Chaplaincy Advisory Council members Victor Muhammad, Robert Brown, Paul Duby, Euphemia Franklin, Tricia Worrell, Steve Johnson, Robert Wilcoxson Bey, David Nelson, Sani Abbas, and James Vander Schaff. Plaintiffs sue Defendants in their individual and official capacities.[3]

In Plaintiffs' complaint, they allege that they are members of the "Nation of Gods and Earth (NOGE)." (Compl., ECF No. 1, PageID.3.) Plaintiffs claim that "Defendants allow prisoners whose path to God is religious the freedom to Love and Honor God because they agree with them but they disagree with how the Plaintiffs Love and Honor God." (*Id.*, PageID.6 (capitalization in original.).) Plaintiffs further claim that "Defendants' excessive entanglement allow[s] religious groups to congregate weekly[,] celebrate Honor days (Holidays), contribute to their external organization, and adhere to their divine laws, diets, and possess their publications, but deny the same to Plaintiffs because they disagree with how Plaintiffs love and honor God." (*Id.*) Further, Plaintiffs allege that they "are sincere adherents who must Love and Honor God according to the

---

[3] In the case caption of the complaint, Plaintiffs indicate that they are suing Defendants in their individual capacities only. (Compl., ECF No. 1, PageID.1–2.) However, in the "Introduction" section of the complaint, when describing the actions of Defendants, they reference that "Defendants, act[ed] in their official and individual capacities . . ." (*id.*, PageID.3), and in the body of their complaint, they state that Defendants "are sued in their individual and official capacities." (*Id.*, PageID.6.) Under these circumstances, liberally construing *pro se* Plaintiffs' complaint, as the Court is required to do, it appears that Plaintiffs intended to sue Defendants in their individual and official capacities.

dictates of their Divine God Centered Culture." (*Id.* (capitalization in original).) The Court sets forth the factual allegations as related to each Plaintiff.

### A.    Plaintiff Lopp

On December 6, 2019, Plaintiff Lopp "sent a letter" to Defendant Washington "asking her to revise the religious meal." (*Id.*, PageID.7.) On January 1, 2020, Plaintiff Lopp requested a vegan meal at LCF. (*Id.*) Defendant Hollingsworth "informed Lopp that if [Lopp] changed his religious preference he would be approved." (*Id.*) Plaintiff Lopp states that Defendant Hollingsworth sent Plaintiff Lopp's "interview form" to Defendant Adamson, "who with suggestions from the Chaplaincy Advisory Council[,] denied Lopp's request for a vegan meal." (*Id.*) Plaintiff Lopp submitted a grievance about the matter on March 22, 2020, and the grievance was denied. (*Id.*, PageID.8.) Plaintiff Lopp then submitted an appeal to the Director's Office. (*Id.*) Plaintiff Lopp states that "Defendant Washington failed to correct the unconstitutional denials from her junior employees." (*Id.*)

Thereafter, on August 14, 2020, Plaintiff Lopp submitted a request to "the Warden's Office of Defendant Bryan Morrison" for "recognition of the [NOGE] adherents to have congregate meetings, celebrate honor days, adhere to their dietary restrictions, purchase from a NOGE vendor, and pay tribute to the NOGE." (*Id.*) Defendant Hollingsworth sent Plaintiff Lopp's request to the MDOC's special activities coordinator on August 17, 2020. (*Id.*) In a memorandum dated April 21, 2020, Defendant Dirschell and the members of the Chaplaincy Advisory Council—Defendants Muhammed, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff—"recommended that the NOGE be denied recognition." (*Id.*) Defendant Bush "concurred with the Special Acts Coordinator and the Chaplaincy Advisory Council, and denied Lopp's request." (*Id.*)

On August 24, 2020, Plaintiff Lopp submitted a request to "the Warden's Office (Defendant Morrison) . . . to receive an alternate meal to comport with the NOGE tenets." (*Id.*, PageID.9.) On September 10, 2020, Kristen Losinski (not a party) from the Warden's Office "told Lopp the warden is not responsible for handling his request and refused to send it." (*Id.*) On November 2, 2020, Plaintiff Lopp submitted "a request," presumably for an alternate meal, to Defendants Washington and Hollingsworth. (*Id.*)

On January 1, 2021, Plaintiff Lopp "again sought to receive a vegan meal, because he [wa]s being forced to choose between adequate nutrition and his cultural tenets, forced to eat smaller amounts of food, resulting in hunger, headaches, dizziness, and a decline in overall quality of life." (*Id.*) "Defendant Hollingsworth informed Lopp if he changed his religious preference he would receive the meal to which Lopp declined." (*Id.*)

Thereafter, on January 25, 2021, Defendant Hollingsworth sent Plaintiff Lopp's "request for an alternative meal to the Deputy Director," and on February 16, 2021, Plaintiff received a denial from Defendant Bush. (*Id.*) Plaintiff Lopp submitted a grievance about the matter, and he appealed the matter to step three, where "Defendant Washington failed to correct the unconstitutional denials." (*Id.*) Plaintiff Lopp also submitted a letter to Defendant Washington "by certified mail asking her to change the policy." (*Id.*)

On September 5, 2021, Defendant Hollingsworth "responded to Plaintiff [Lopp] by memorandum denying the request for recognition of the NOGE, referencing the [April 21, 2020] memo [from the Chaplaincy Advisory Council and Defendants Bush and Dirschell]." (*Id.*, PageID.8.) Plaintiff Lopp submitted a grievance about the matter, and he "appealed the denial of [the] grievance to the Director's Office where Defendant Washington had authority to correct the denial but failed to do so." (*Id.*, PageID.8–9.)

6

On January 7, 2022, Plaintiff Lopp "received a mail rejection for the 'Five Percenter,' a book that is central to the Plaintiffs' God Centered Culture." (*Id.*, PageID.10.) On April 14, 2022, Plaintiff Lopp "received a mail rejection for two additional books that are central to the NOGE's tenets." (*Id.*) "The MDOC's restricted publications list was revised by and with Defendants Washington[,] Bush[,] Dirschell, and Morrison's approval on October 19, 2021." (*Id.*) "These Defendants have used the restricted book list to suppress the NOGE theology and categorically ban materials central to the NOGE doctrine." (*Id.*)

"On March 5, 2022, Plaintiff Lopp requested an alternative diet to adhere to the NOGE Cultural Tenets." (*Id.*) Defendant Bush denied Plaintiff Lopp's request on May 6, 2022. (*Id.*) Plaintiff submitted a grievance about the matter. (*Id.*)

On May 17, 2022, Defendants Dirschell, Muhammad, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff met to review Plaintiff Lopp's request "to meet collectively, celebrate Honor Days, contribute to their external organization, and to practice NOGE's dietary requirements." (*Id.*) Plaintiff Lopp wrote to Defendant Hollingsworth on August 7, 2022, "inquiring about the status of his request," and Defendant Hollingsworth advised Plaintiff Lopp that Defendant Dirschell and the Chaplaincy Advisory Council would "discuss the recognition of the NOGE in the fall." (*Id.*)

## B.     Plaintiff Boyd

On February 18, 2020, Plaintiff Boyd "sought to be placed on the religious vegan meal line to comport with his God-Centered-Cultural Tenets of the NOGE." (*Id.*) On September 22, 2020, Defendant Hollingsworth advised Plaintiff Boyd that his request had been reviewed by Defendant Adamson and the Chaplaincy Advisory Council and that it was denied. (*Id.*, PageID.11.) Plaintiff Boyd "submitted a grievance on this matter at every step to the Director's Office – Defendant Washington." (*Id.*)

"On September 18, 2020[,] Plaintiff Boyd sent a request to Defendant Morrison for adherents of the NOGE to have time, space, be excused from work assignments, be provided with vegetarian meals, and audio and video equipment to celebrate and observe their God-Centered-Culture's honor days." (*Id.*) Defendants Dirschell, Adamson, Muhammad, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Abbas, and Vander Schaff "decided that Boyd and the NOGE should be denied divine dietary laws," and Defendant Bush "concurred" and denied the request. (*Id.*)

"On September 28, 2021[,] Defendant Hollingsworth sent Plaintiff Boyd a memo denying his request for the NOGE's Honor Days observation." (*Id.*) Plaintiff Boyd submitted a grievance about the matter. (*Id.*) Plaintiff appealed the grievance denial to the Director's Office, and Defendant Washington "failed to correct the unconstitutional denials from her junior employees." (*Id.*)

Subsequently, on February 25, 2022, Plaintiff Boyd submitted a request to Defendant Morrison, asking Morrison "to allow [Boyd] and other NOGE sincere adherents, to meet collectively, celebrate honor days, contribute to their external organization, and practice dietary laws of the NOGE." (*Id.*, PageID.12.) Plaintiff Boyd states that Defendants Dirschell, the members of the Chaplaincy Advisory Council, and Defendant Morrison "met the week of May 17, 2022, and they failed to discuss the recognition of the NOGE." (*Id.*)

On March 5, 2022, Plaintiff Boyd requested "an alternative diet to adhere to the NOGE dietary laws." (*Id.*, PageID.11.) Defendant Bush denied Plaintiff Boyd's request. (*Id.*) Plaintiff Boyd submitted a grievance about the matter, and Plaintiff Boyd claims that Defendant Washington "failed to perform her duty and protect Boyd and NOGE from 'theological discrimination.'" (*Id.*)

8

### C.    Plaintiff Jones

Plaintiff Jones "requested an alternative diet to adhere to the NOGE dietary laws," and Defendant Bush denied the request. (*Id.*, PageID.12.) Plaintiff submitted a grievance about the matter, and Defendant Washington "failed to perform her duty and protect Jones and the NOGE from theological discrimination" on May 6, 2022. (*Id.*)

On February 25, 2022, Plaintiff Jones submitted a request to Defendant Morrison, requesting "to meet collectively, celebrate honor days, contribute to their external organization, and practice dietary laws of the NOGE." (*Id.*) Plaintiff Jones states that Defendants Dirschell and the members of the Chaplaincy Advisory Council met on May 17, 2022, and they "failed to discuss the recognition of the NOGE." (*Id.*)

### D.    Plaintiffs' Claims

Based on the foregoing allegations, Plaintiffs allege that Defendants' actions violated their First Amendment rights, their Eighth Amendment rights, and their right to due process and equal protection under the Fourteenth Amendment. (*Id.*, PageID.15–18.) Plaintiffs also allege that Defendants' actions violated the Citizenship or Immunities Clause of the Fourteenth Amendment. (*Id.*, PageID.12.) Further, Plaintiffs allege that Defendants violated their rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a). (*Id.*, PageID.15–18.) As relief, Plaintiffs seek monetary damages, as well as declaratory and injunctive relief. (*Id.*, PageID.18–9.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Defendants Washington and Morrison

With respect to Defendant Washington, Plaintiffs allege that they all appealed their grievance denials to the Director's Office, and "Defendant Washington failed to correct the unconstitutional denials from her junior employees." (Compl., ECF No. 1, PageID.8; *see id.*,

PageID.9–12.) As to Defendant Morrison, Plaintiffs allege that they submitted written requests to Morrison, asking that the NOGE adherents be permitted "to meet collectively, celebrate honor days, contribute to their external organization, and practice dietary laws of the NOGE," and that either Morrison forwarded these requests to others, such as the Chaplaincy Advisory Council, or that Morrison failed to act upon their requests. (*See, e.g.*, *id.*, PageID.9, 10, 12.)

A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Government officials, such as Defendants Washington and Morrison, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiffs fail to allege any facts showing that Defendants Washington and Morrison encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiffs fail to allege facts to show that Defendants Washington and Morrison engaged in active unconstitutional behavior, and Plaintiffs' conclusory allegations of supervisory responsibility are insufficient to demonstrate that these Defendants were personally involved in the alleged violations of Plaintiffs' constitutional rights. Because Plaintiffs have failed to allege that Defendants Washington and Morrison engaged in any active unconstitutional behavior, Plaintiffs fail to state a claim under Section 1983 against these Defendants.

Moreover, with respect to Plaintiffs' RLUIPA claims against Defendants Washington and Morrison, Plaintiffs fail to allege sufficient facts to show purposeful conduct by these Defendants. *See, e.g.*, *McGowan v. Beecher*, No. 1:20-cv-851, 2020 WL 6390203, at *5 (W.D. Mich. Nov. 2, 2020) (discussing that "[a]pplying ordinary tort principles, and in the absence of a state-of-mind standard under the statute itself, liability under the RLUIPA also is limited to intentional conduct" (citing, *inter alia*, *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 WL 4534098, at *6 (W.D. Mich. Sept. 30, 2008); *Fisherman v. Schaefer*, No. 17-cv-3766, 2019 WL 1086390, at *4 (D. Minn. Jan. 17, 2019); *Nelson v. Jackson*, No. 2:12-cv-1167, 2014 WL 197877, at *13 (S.D. Ohio Jan. 15, 2014))). Although Plaintiffs allege that on September 10, 2020, Kristen Losinski (not a party) from the Warden's Office "told Lopp the warden is not responsible for handling his request [regarding an alternate meal] and refused to send it," the statement and actions of this non-party individual

12

are insufficient to show personal, purposeful conduct by Defendant Morrison. (Compl., ECF No. 1, PageID.9); *see, e.g.*, *Vann v. Fischer*, 11-cv-1958, 2012 WL 2384428, at *5 (S.D.N.Y. June 21, 2012) ("Personal involvement is also a prerequisite to a defendant's liability under RLUIPA." (quoting *Joseph v. Fischer*, 08-cv-2824, 2009 WL 3321011, at *18 (S.D.N.Y. Oct. 8, 2009))). *But see Agrawal v. Briley*, No. 02 C 6807, 2004 WL 1977581, at *14 (N.D. Ill. Aug. 25, 2004) (concluding that for a RLUIPA claim, a prison-official's "deliberate avoidance of any involvement in review of Plaintiff's grievance establishes sufficient 'fault,' [i.e.,] an adequate causal nexus to Plaintiff's injury, to support a finding of liability against him").

Accordingly, for these reasons, Plaintiffs' claims against Defendants Washington and Morrison will be dismissed.

### B. Eighth Amendment Claims

Plaintiffs allege that Defendants violated their Eighth Amendment rights. (*See, e.g.*, Compl., ECF No. 1, PageID.15–18.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiffs allege in a conclusory manner that Defendants violated their Eighth Amendment rights by denying Plaintiffs' "right to weekly congregate meetings, Honor Days observance, diets, publications, and vendors that they allow other prisoners the right to." (Compl., ECF No. 1, PageID.15.) As an initial matter, Plaintiffs' conclusory assertions that Defendants' actions violated the Eighth Amendment are insufficient to show that they were deprived of "essential food, medical care, or sanitation." *Rhodes*, 452 U.S. at 348 (citation omitted). Only Plaintiff Lopp alleges additional facts regarding his request for a vegan diet. Specifically, Plaintiff

14

Lopp alleges that on January 1, 2021, he "again sought to receive a vegan meal, because he is forced to choose between adequate nutrition and his cultural tenets, forced to eat smaller amounts of food, resulting in hunger, headaches, dizziness, and a decline in overall quality of life." (Compl., ECF No. 1, PageID.9.)

"[I]t is clearly established that [a] prison must provide adequate nutrition to prisoners," and that a failure to do so is an Eighth Amendment violation. *Welch v. Spaulding*, 627 F. App'x 479, 484 (6th Cir. 2015). Although Plaintiff Lopp alleges that he was "forced to eat smaller amounts," he does not allege that the meals offered to him were nutritionally inadequate. (Compl., ECF No. 1, PageID.9.) Additionally, Plaintiff Lopp states that he was "forced to choose between adequate nutrition and his cultural tenets;" however, Plaintiff Lopp does not indicate which of these options he chose. Therefore, Plaintiff Lopp's allegations necessarily fail to show that he in fact ate nutritionally inadequate meals. Under these circumstances, the factual allegations are simply too scarce to show deliberate indifference. In short, Plaintiff Lopp appears to ask the Court to create plausibility to his claims from ambiguity; however, ambiguity does not support a claim.

Further, Plaintiffs allege in a conclusory manner that they "are subject to punishment meted out by Defendants for possession of materials reflective of Plaintiffs['] Divine God Centered Culture[,] which is not in line with the religious path to God granted facility protection by the Defendants." (*Id.*, PageID.3.) Plaintiffs provide no factual allegations supporting this assertion. Indeed, there are no facts in the complaint about any sort of "punishment" that Plaintiffs received. Conclusory allegations of unconstitutional conduct, such as these, without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

15

Accordingly, for the reasons set forth above, the Court will dismiss Plaintiffs' Eighth Amendment claims.

### C.    Fourteenth Amendment Due Process Clause Claims

#### 1.    Procedural Due Process

Plaintiffs vaguely contend that Defendants violated their right to due process under the Fourteenth Amendment. (*See, e.g.*, Compl., ECF No. 1, PageID.12–13.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

To the extent that Plaintiffs claim that Defendants violated their due process rights with respect to the grievance procedure, courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Furthermore, to the extent that Plaintiffs claim that Defendants violated the MDOC's policies, courts routinely have recognized that a prisoner does not enjoy any federally protected

16

liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983);

*Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437

(6th Cir. 2001). Moreover, Section 1983 does not provide redress for a violation of prison policy.

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th

Cir. 1994).

　　　Accordingly, for the reasons set forth above, any intended procedural due process claims

will be dismissed.

### 2.　　Substantive Due Process

　　　To the extent that Plaintiffs allege that Defendants violated their substantive due process

rights, as explained below, they fail to state such a claim. "Substantive due process 'prevents the

government from engaging in conduct that shocks the conscience or interferes with rights implicit

in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002)

(citation omitted). "Substantive due process . . . serves the goal of preventing governmental power

from being used for purposes of oppression, regardless of the fairness of the procedures used."

*Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011)

(citation omitted). "Conduct shocks the conscience if it 'violates the decencies of civilized

conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento

v. Lewis*, 523 U.S. 833, 846–47 (1998)).

　　　In this action, Plaintiffs fail to allege conduct that is sufficiently outrageous to support a

substantive due process claim. Moreover, "[w]here a particular [a]mendment 'provides an explicit

textual source of constitutional protection' against a particular sort of government behavior, 'that

[a]mendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v.

Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due

process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Fourteenth Amendments apply to protect Plaintiffs' rights.

Accordingly, for the reasons set forth above, any intended substantive due process claim will be dismissed.

### D.    Fourteenth Amendment Privileges or Immunities Clause Claims

Plaintiffs make a conclusory assertion that Defendants' actions violated the Privileges or Immunities Clause. (Compl., ECF No. 1, PageID.12.) In their complaint, Plaintiffs reference various violations of their Fourteenth Amendment rights, and as such, it appears that Plaintiff intended to bring this claim pursuant to the Privileges or Immunities Clause of the Fourteenth Amendment.

The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. "[T]he privileges or immunities of national citizenship to which [the clause] refers have been construed narrowly, extending to the right to petition Congress, to vote for national officers, to enter public lands, to be protected against violence while in the custody of a United States Marshal[], and to inform federal authorities of the violation of federal law." *Snyder v. Smith*, 7 F. Supp. 3d 842, 857 (S.D. Ind. 2014) (citing *Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1192 n.2 (7th Cir. 1976); *Saenz v. Roe*, 526 U.S. 489, 502 (1999)); *see also Slaughter–House Cases*, 83 U.S. 36 (1872).

Plaintiffs fail to allege any facts describing how Defendants violated their rights under the Privileges or Immunities Clause of the Fourteenth Amendment, much less any facts suggesting that Defendants' alleged actions had any bearing on Plaintiffs' national citizenship rights.

Accordingly, Plaintiffs fail to state a claim under the Privileges or Immunities Clause of the Fourteenth Amendment, and this claim will be dismissed.

### E.    Mail Rejection Claims

Plaintiffs allege that Defendants violated their constitutional rights when they improperly rejected mail that was sent to Plaintiff Lopp. Specifically, Plaintiff Lopp alleges that on January 7, 2022, he received a mail rejection for a book titled, "Five Percenter," and on April 14, 2022, Plaintiff Lopp "received a mail rejection for two additional books that are central to the NOGE's tenets." (Compl., ECF No. 1, PageID.10.) Plaintiff Lopp apparently faults Defendants Washington, Bush, Dirschell, and Morrison for the rejections, stating that "[t]he MDOC's restricted publications list was revised by and with Defendants Washington[,] Bush[,] Dirschell, and Morrison's approval on October 19, 2021." (*Id.*) However, Plaintiff Lopp does not indicate why the mail discussed above was rejected. That is, Plaintiff Lopp does not indicate whether the mail was rejected because it was on the restricted publications list or whether it was rejected for some other reason. Under these circumstances, Plaintiffs have failed to show that any of the named Defendants were involved in the rejection of Plaintiff Lopp's mail.

"[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Further, a complaint, or claim, is subject to dismissal where a plaintiff has failed to allege facts to show how the named defendants were involved in the violation of his rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Because Plaintiffs have failed to allege sufficient facts to show that any of the

named Defendants were personally involved in the rejection of the above-discussed mail, any claims regarding the mail rejections will be dismissed.

### F.    RLUIPA Claims

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7).

RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd Sossamon v. Texas*, 563 U.S. 277 (2011);[4] *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity."); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[5]

Moreover, RLUIPA does not permit damages claims against prison officials in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought

---

[4] The United States Supreme Court granted certiorari only on the question of "[w]hether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[5] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Id*. at 567–69. The Sixth Circuit stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA. Accordingly, Plaintiffs' damages claims and individual capacity claims under RLUIPA against remaining Defendants Bush, Hollingsworth, Adamson, Dirschell, Muhammad, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff will be dismissed.

That leaves only a claim for declaratory or injunctive relief against remaining Defendants Bush, Hollingsworth, Adamson, Dirschell, Muhammad, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff in their official capacities. That type of claim is not barred by sovereign immunity. *See Ex parte Young,* 209 U.S. 123, 159–60 (1908). However, the *Ex parte Young* exception for declaratory and injunctive relief applies only to prospective relief. *Green v. Mansour*, 474 U.S. 64, 68–73 (1985); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507–08 (6th Cir. 2008); *see also Kanuszewski v. Mich. Dep't of Health & Hum. Servs*., 927 F.3d 396, 406 (6th Cir. 2019) (holding that in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief). Here, although not specifically articulated by Plaintiffs, it appears that Plaintiffs allege that there is an ongoing violation of federal law because Defendants continue to deny their requests to engage in actions consistent with their NOGE beliefs. (*See, e.g.*, Compl., ECF No. 1, PageID.18–19.) Therefore, although Plaintiffs have by no means proven their RLUIPA claims, the Court will not

dismiss, on initial review, Plaintiffs' RLUIPA claims for injunctive and declaratory relief against the remaining Defendants in their official capacities.

### G. Remaining Constitutional Claims

With respect to Plaintiffs' constitutional remaining claims against Defendants Bush, Hollingsworth, Adamson, Dirschell, Muhammad, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff—i.e., Plaintiffs' First Amendment claims and Fourteenth Amendment Equal Protection Clause claims—taking Plaintiffs' factual allegations as true and in the light most favorable to them, the Court will not dismiss these claims on initial review.

## III. Severance

Federal Rule of Civil Procedure 20(a)(1) identifies the circumstances where Plaintiffs may join together and raise their claims in one action:

> (A) [if] they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) [if] any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). As detailed above, Plaintiffs' claims arise out of the same series of transactions and occurrences, and it appears, therefore, that the joinder of Plaintiffs' claims would be permitted under the rules.

However, although Plaintiffs' claims may be permissibly joined under Rule 20, there are ample reasons to sever the claims of multiple prisoner-plaintiffs who are proceeding *in pro per*. In *Proctor v. Applegate*, 661 F. Supp. 2d 743 (E.D. Mich. 2009), the United States District Court for the Eastern District of Michigan set out those reasons:

> In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966), the Supreme Court held that "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of

claims, parties and remedies is strongly encouraged." Consistent with this policy, the requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). The undersigned suggests, however, that plaintiffs, especially prisoners, do not have free reign to join multiple claims and defendants in any manner they choose. As the New Jersey District Court recently observed, "the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit." *Boretsky v. Corzine*, 2008 WL 2512916, *4 (D.N.J. 2008), citing, *Pruden v. SCI Camp Hill*, 252 F. App'x 436 (3d Cir. 2007); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007); *Coughlin, supra*. And, Rule 20 does not authorize a plaintiff to "incorporate into an existing action a different action against different parties and presenting entirely different factual and legal issues." *Lovelace v. Lee*, 2007 WL 3069660, *1 (W.D. Va. 2007), quoting, *Trail Realty Inc. v. Beckett*, 462 F.2d 396, 399–400 (10th Cir. 1972).

The New Jersey District Court also discussed the pervasive impracticalities associated with multiple-plaintiff prisoner litigation, which militates against permissive joinder even if it were otherwise allowed by Rule 20(a). *Boretsky*, at *5. Among the difficulties noted are the "need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation." *Id*. A Wisconsin federal court also found that permitting multiple prisoner-plaintiffs to proceed in a single action invites violations of Rule 11(a), which requires every pleading to be signed by all pro se plaintiffs. *Ghashiyah v. Frank*, 2008 WL 680203, *1 (E.D. Wis. 2008). Moreover, it often results in pleadings being filed on behalf of plaintiffs without their consent. *Id*.

Some courts have also noted that "jail populations are notably transitory, making joint litigation difficult." *Boretsky*, at *5, citing, *White v. Tennessee Bd. of Probation and Paroles*, 2007 WL 1309402 (W.D. Tenn. 2007) ("[I]t is administratively impractical to permit five inmates at three institutions to litigate their claims in a single action"). Other District Courts have also pointed to the "need for resolution of individualized questions of fact and law surrounding the requirement for exhaustion of administrative remedies under 42 U.S.C. § 1997e(a)." *Boretsky*, at *6, citing, *Worthen v. Oklahoma Dept. of Corrections*, 2007 WL 4563665 (W.D. Okla. 2007) (Report and Recommendation), Report and Recommendation adopted in pertinent part, 2007 WL 4563644 (W.D. Okla. 2007); *Lilly v. Ozmint*, 2007 WL 2022190 (D.S.C. 2007).

The *Boretsky* court found the reasoning of these other District Courts to be persuasive, noting that prisoners are "not in the same situation as non-prisoner joint plaintiffs; prisoners' circumstances make joint litigation exceptionally difficult." *Boretsky*, at *6. The court concluded, however, that it would "not be just to dismiss this case in its entirety merely because the co-plaintiffs' claims may not be joined." *Id*. Instead, pursuant to Rule 21, the court dismissed all plaintiffs except the first named plaintiff[] and directed the Clerk of the Court to open a separate case for

each dismissed plaintiff, docketing the original complaint and the court's opinion and order in all the newly severed cases. Each plaintiff was also granted leave to file an amended complaint asserting his individual claims. *Id.*

*Proctor*, 661 F. Supp. 2d at 779–81.

This Court has experienced many of the described difficulties that follow from permitting multiple plaintiffs to proceed in *pro per* in a single litigation. No matter how efficient joinder may appear at the beginning of a case, prisoner-plaintiffs frequently are unable to provide pleadings signed by all parties as required by Rule 11(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's individual name—or by a party personally if the party is unrepresented."). When prisoners are transferred to different correctional facilities, as is the case here, they are never able to all sign one pleading. Instead, motions are proposed or opposed by one but not all plaintiffs, leaving the Court to puzzle out who is seeking relief against whom and on whose behalf.

Further, it is well established that *pro se* litigants lack standing to represent the interests of others. *See Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. State of Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States the parties may plead and conduct *their own cases* personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The federal courts long have held that Section 1654 preserves a party's right to proceed *pro se*, but only with respect to their own claims. Only a licensed attorney may represent other persons. *See Rowland v. Cal. Men's Colony,*

*Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969).

Because Plaintiffs are now all housed at different correctional facilities, permitting Plaintiffs to proceed in a joint action will result in motions filed by only one Plaintiff, which would fail to meet the requirement of Rule 11(a) of the Federal Rules of Civil Procedure. In the interests of justice, therefore, the Court will direct the Clerk to sever the claims of Plaintiffs Lopp, Jones, and Boyd into separate actions. Plaintiff Lopp may proceed under the existing case number. The Clerk shall open a new case for the claims of each of the remaining Plaintiffs (Jones and Boyd). The pleadings filed to date in the instant case shall appear on the docket of each case. Plaintiffs will not be required to pay filing fees in the new cases.

The Western District of Michigan has several rules designed to have related or cognate cases assigned to a single judge. *See* W.D. Mich. LCivR. 3.3.1(d), 3.3.2. Assigning related or cognate cases promotes judicial economy. The three cases that will result from the severance of Plaintiffs' claims are related cases under the Local Rules.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington and Morrison will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Bush, Hollingsworth, Adamson, Dirschell, Muhammad, Brown, Duby, Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff: Eighth Amendment claims, Fourteenth Amendment due process claims, Fourteenth Amendment Privileges or Immunities Clause claims, any claims regarding mail rejections, and all damages claims and individual capacity claims under RLUIPA. The following claims against Defendants Bush, Hollingsworth, Adamson, Dirschell, Muhammad, Brown, Duby,

25

Franklin, Worrell, Johnson, Wilcoxson Bey, Nelson, Abbas, and Vander Schaff remain in the case:
First Amendment claims; Fourteenth Amendment Equal Protection Clause claims; and official
capacity RLUIPA claims for injunctive and declaratory relief.

Further, as detailed above, the Court will direct the Clerk to sever the claims of Plaintiffs
Lopp, Jones, and Boyd into separate actions.

An order consistent with this opinion will be entered.


Dated:   May 5, 2023                                  /s/ Sally J. Berens
                                                     SALLY J. BERENS
                                                     United States Magistrate Judge